UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>DAVID SUBIL,<br><br>       Defendant. | CASE NO. 2:23-cr-00030-TL<br><br>ORDER ON MOTION FOR<br>REVIEW OF DETENTION ORDER |

This matter comes before the Court on Defendant's Motion for Review and Revocation of Magistrate Judge's Detention Order (Dkt. No. 27) ("Motion for Review"), appealing the April 11, 2023, detention order (Dkt. No. 15). Having conducted a *de novo* review and considered the Complaint (Dkt. No. 1), the Indictment (Dkt. No. 3), the audio recording of the April 6 arraignment, the Pretrial Report of the Western District of Washington (Dkt. No. 13), the Pretrial Report of the Southern District of Florida (Dkt. No. 13-1), the transcript of the April 11 detention hearing (Dkt. No. 17), the Government's response (Dkt. No. 28), Mr. Subil's reply (Dkt. No. 29),

ORDER ON MOTION FOR
REVIEW OF DETENTION ORDER - 1

and the relevant record, the Court GRANTS the Motion for Review, REVOKES the detention order, and ORDERS his release with conditions, for the reasons explained below.

## I. BACKGROUND

Mr. Subil faces three charges related to the interstate transportation of stolen property. On March 1, 2023, a grand jury indicted Mr. Subil on one count of Conspiracy to Commit Interstate Transportation of Stolen Property, 18 U.S.C. § 371, and two counts of Interstate Transportation of Stolen Property, 18 U.S.C. §§ 2 and 2314. *See* Dkt. No. 3. The charges concern allegedly fraudulent orders of seafood that were obtained in Washington State and then transported to Florida to be resold for a profit. *Id*. at 2. Mr. Subil was arrested in the Southern District of Florida on February 19, 2023.

The Government filed what appears to be a form motion seeking Mr. Subil's detention. Dkt. No. 10. Under "Eligibility of Case," it selected only "Serious risk the defendant will flee," and under "Reason for Detention," it selected only "Defendant's appearance as required." *Id*. at 1–2. At arraignment on April 6, the magistrate judge acknowledged receipt of the Government's motion for detention and asked the Parties if they were "prepared to argue the issue of detention today" or if they were seeking a continuance. Audiotape: Arraignment, Dkt. No. 11, at 8:13–8:23 (on file with the Court) (the "Audiotape"). The Government requested a three-day continuance. *Id*. at 8:24–8:26. Nothing else was said by the Government regarding the motion for detention, and defense counsel neither objected nor said anything in response to the motion. The magistrate judge granted the continuance and set the matter for a detention hearing five days later. *Id*. at 8:26–8:35. Mr. Subil was ordered detained pending the hearing, and the arraignment concluded. *Id*. at 8:59–9:08.

Pretrial Services in the Western District of Washington recommended that Mr. Subil be released pending trial on his personal recognizance under their supervision and with the special

ORDER ON MOTION FOR
REVIEW OF DETENTION ORDER - 2

1  conditions outlined in the report. Dkt. No. 13 at 8. Pretrial Services in the Southern District of

2  Florida also recommended that Mr. Subil be released with conditions. Dkt. No. 13-1 at 11. On

3  April 11, the magistrate judge conducted a detention hearing and ordered that Mr. Subil remain

4  detained because "there are no conditions which the defendant can meet which would reasonably

5  assure the defendant's appearance as required or the safety of any other person and the

6  community." Dkt. No. 15 at 1; *see* Dkt. No. 17 (transcript). The magistrate judge concluded that

7  "defendant should be detained given his criminal history, the nature of the offense, and the risk

8  of flight that defendant poses." *Id.* at 2.

9        Mr. Subil now appeals the detention order and seeks his release pending trial "with a set

10  of conditions as proposed by pretrial services plus GPS/EHM monitoring." Dkt. No. 27 at 1; *see*

11  Dkt. No. 29; 18 U.S.C. 3145(b). The Government opposes. Dkt. No. 28.

## II.   LEGAL STANDARD

### A.   Standard of Review

A person who is ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C.§ 3145(b). A district court then reviews the detention order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990).

### B.   The Bail Reform Act

The Bail Reform Act ("the Act") requires that a court release a criminal defendant on personal recognizance or on an unsecured appearance bond before trial unless there is a determination that such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). This default requirement is in accord with the principle that "[i]n our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481

U.S. 739, 755 (1987). The Ninth Circuit cautions that "[o]nly in rare cases should release be denied." *United States v. Santos–Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)). Further, "doubts regarding the propriety of release are to be resolved in favor of the defendant." *Id.* If a court determines that such release will not reasonably assure the defendant's appearance and the safety of the community, the court must impose "the least restrictive further condition, or combination of conditions," that will reasonably assure these goals. 18 U.S.C. § 3142(c)(1)(B). The Act only requires detention where a court finds that *no* such condition or combination or conditions can do so. 18 U.S.C. § 3142(e)(1).

### 1. Hearing Standard

Where the Government seeks pretrial detention of a defendant, it must first make a motion stating which ground(s) it asserts as a basis for detention. 18 U.S.C. § 3142(f). The Government must then demonstrate that the defendant is eligible for a detention hearing. A defendant is eligible for a hearing only if the Government shows, by a preponderance of the evidence, that the case falls into one of the categories listed in 18 U.S.C. § 3142(f). *See United States v. Fanyo-Patchou*, 426 F. Supp. 3d 779, 782 (W.D. Wash. 2019) (citing *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) and *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1124 (N.D. Iowa 2018)); *see also United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) ("[T]he Government must establish by a preponderance of the evidence that it is entitled to a detention hearing.").[1] If a hearing is appropriate, it "shall be held immediately upon the person's first appearance" unless the defendant or the Government seeks a continuance. 18 U.S.C. § 3142(f). "[S]uch person shall be detained" during the continuance. *Id.*

---

[1] It appears that only the Second Circuit has identified an evidentiary standard for establishing a § 3142(f) category. No other Circuit has addressed this issue.

### 2. Detention Standard

If a defendant is eligible for a detention hearing, the court must then determine whether there are conditions of release that reasonably assure two goals: "the appearance of the defendant as required" and "the safety of any other person and the community." 18 U.S.C. § 3142(g). In making this determination, a court considers the following factors: (1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id*.

To obtain pretrial detention, the government bears the burden of showing by a preponderance of the evidence that there are no conditions that will reasonably assure the defendant's appearance as required, and by clear and convincing evidence that there are no conditions that will reasonably assure the safety of any other person and the community.[2] *See* 18 U.S.C. § 3142(e)(1); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

---

[2] The plain language of the Act may suggest that a court must make findings as to *both* nonappearance and safety before it can order detention. *See* 18 U.S.C. §§ 3142(e)(1) (requiring detention if judicial officer finds no condition or combination of conditions reasonably assure appearance "and" safety), 3142(f) (requiring a hearing to determine whether condition or combination of conditions will reasonably assure appearance "and" safety). Nevertheless, courts presented with this issue have understood nonappearance and safety to be independent grounds for detention. *See, e.g., United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

ORDER ON MOTION FOR
REVIEW OF DETENTION ORDER - 5

### III. DISCUSSION

To make its determination, the Court first determines whether Mr. Subil is eligible for a detention hearing under 18 U.S.C. § 3142(f). Then, the Court considers whether the factors enumerated in 18 U.S.C. § 3142(g) support detention.

### A. Eligibility for Detention Hearing

Mr. Subil argues that his case is not eligible for a detention hearing. Dkt. No. 27 at 7–9. He argues that the Government was required to show by a "clear preponderance of the evidence" that he poses a *serious* risk of flight, (*id*. at 7–8), but that the magistrate judge found that Mr. Subil posed only a *risk* of flight (*id*. at 9; Dkt. No. 15 at 2). In response, the Government argues that the hearing was proper because its motion was "properly filed and heard within the required timeframe . . . ." Dkt. No. 28 at 6. It also argues that the hearing evidence showed that Mr. Subil posed a serious risk of flight. *Id*. at 6–7.

#### 1. Procedural Requirements

The Act authorizes a detention hearing only in certain categories of cases; where a case does not fall under one of those categories, a detention hearing may not be held. 18 U.S.C. §§ 3142(f)(1)–(2) ("The judicial officer shall hold a hearing . . . *in a case that involves*" one of the enumerated categories (emphasis added)); *see Salerno*, 481 U.S. at 747 ("The [Act] carefully limits the circumstances under which detention may be sought to the most serious of crimes."); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("A hearing can be held only if one of the [] circumstances listed in (f)(1) and (2) is present . . . ."); *United States v. Ploof*, 851 F.2d 7, 9 (1st Cir. 1988) ("Section 3142(f) . . . specifies certain conditions under which a detention hearing shall be held."); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("First, a judicial officer must find one of [the] circumstances triggering a detention hearing."); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) ("[T]he requisite circumstances for invoking a detention hearing in effect

serve to limit the types of cases in which detention may be ordered prior to trial." (quoting S. Rep. No. 98-225, at 20 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3203)); *cf. United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (holding that pretrial detention was unauthorized where the offense was not a "crime of violence" under § 3142(f)(1)).

The § 3142(f) categories are not mere incantations that will conjure a hearing upon their simple utterance. The Act requires that the Government make a factual showing to justify why it should be given a shot at detention. *See Singleton*, 182 F.3d at 12 ("[A] detention order is based on a hearing, while *an order to hold a hearing is based on a proffer of what the hearing might establish*." (emphasis added)); *Watkins*, 940 F.3d at 158 ("*Once the Government has demonstrated to the District Court that it is entitled to seek pretrial detention under § 3142(f)*, a judicial officer must promptly hold a hearing." (emphasis added)). Thus, Section 3142(f) serves an important "gate-keeping function," *id.*, by preventing even the *opportunity* to seek detention in all but a certain, narrow subset of cases. Indeed, the Supreme Court's holding that detention imposed by the Act is regulatory, not punitive—and therefore constitutional—is premised in part on the Act's careful limits on when a detention hearing is available. *Salerno*, 481 U.S. at 749 (finding pretrial detention not "excessive in relation to the regulatory goal Congress sought to achieve").

### 2. Mr. Subil's Case

Here, there was no factual showing to support the order of a detention hearing, nor was there a finding that a basis for a hearing was present. The Government's Motion for Detention Order (Dkt. No. 10) appears to be nothing more than a routine form consisting of blank spots to be marked next to conclusory recitations of statutory text that merely list the § 3142(f) categories. The Government marked an "X" next to "Serious risk of defendant will flee" (Dkt. No. 10 at 2) but did not provide any factual allegations to support a motion on this basis, much less sufficient factual allegations to meet a "preponderance of the evidence" standard based upon

the pleading alone. *Watkins*, 940 F.3d at 158. At arraignment, the court did not inquire into the Government's basis for alleging a serious risk of flight before ordering the hearing, nor did the court make a finding that a serious risk of flight was present. *See* Audiotape. The Government did not offer any information to support its motion, and defense counsel did not object to the order. *Id*. As a result, the hearing was ordered without a proper basis, and Mr. Subil was detained pending an improper hearing.

Perhaps where the Government does not request a continuance, the grounds for the motion are usually provided and discussed simultaneously with the detention hearing so that there is no additional detention pending a hearing. But that did not happen here. Or perhaps it is the case that "in common practice, if the Government files a motion for detention under 18 U.S.C. § 3142(f)(2)(A) based on alleged serious risk of flight, the Government gets its detention hearing, with no questions asked about the appropriateness of holding the detention hearing." *United States v. White*, No. C21-4070, 2021 WL 2155441, at *6 (M.D. Tenn. May 27, 2021). And perhaps "the defendant typically does not challenge the Government's right to a detention hearing, and, as a result, the court understandably does not do so (*sua sponte*) either." *Id*. A recent study of federal pretrial detention identifies just such a "problematic feedback loop": "[T]he prosecutor requests pretrial detention for reasons not authorized by the law, the defense attorney does not object, and the judge neither questions the prosecutor nor adheres to the statutory requirements, sometimes jailing people unlawfully." Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 29 (2022), https://perma.cc/D4CG-XWEB.

But such practices cannot amend the text of the Act, which carefully limits the circumstances under which a detention hearing may take place. Under the Act, the Government must proffer information that demonstrates a case is eligible for a detention hearing under

§ 3142(f).[3] *Singleton*, 182 F.3d at 12. Courts must make a finding, by preponderance of the evidence, that a § 3142(f) category is present. *Watkins*, 940 F.3d at 158. And defense counsel must be vigilant in ensuring that these requirements are followed.

Despite this and as previously noted, defense counsel did not object to the court's hearing order, nor did counsel otherwise oppose the Government's motion at the arraignment. Therefore, the Court finds that Mr. Subil waived his right to object to the detention hearing. *See United States v. Lizardi-Maldonado*, 275 F. Supp. 3d 1284, 1289 (D. Utah 2017) ("This Court finds [defendant] cannot now contest the [Government's] right to a detention hearing after previously submitting to the hearing and not contesting the basis for the hearing."); *White*, 2021 WL 2155441, at *6 (suggesting that where a defendant does not object to a detention hearing, they have "waived (or, more likely, forfeited) the right to object to a hearing"); *cf. United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989) (en banc) ("The Act affords certain rights to defendants through procedural rules and defendants may voluntarily and knowingly waive those rights."). Having found that Mr. Subil waived his right to object to a detention hearing in this case, the Court proceeds to review the § 3142(g) factors.

**B.     The § 3142(g) Factors[4]**

As an initial matter, Mr. Subil argues that the magistrate judge did not apply the appropriate standard in detaining Mr. Subil as the judge found a *risk* of flight and not a *serious*

---

[3] When a lawyer signs a motion for a detention hearing, the lawyer is certifying that the information has been formed after a reasonable inquiry and should easily be able to provide the basis for the assertion in the motion or, at a minimum, make an oral proffer supporting the hearing request. *See* Fed. R. Civ. P. 11(b); CrR 1(a) (applying LCR 11 to criminal matters).

[4] In its motion for detention, the Government requested detention only to "reasonably assure . . . [Mr. Subil's] appearance as required." Dkt. No. 10 at 2. The magistrate judge ultimately ordered Mr. Subil detained on *both* risk of nonappearance and safety grounds. Dkt. No. 15 at 1 (finding "no conditions" that would reasonably assure appearance or safety); Dkt. No. 17 at 13 ("So I will find that you're both a risk of flight as well as posing the risk of danger to the community, and I will issue a detention order today.").

risk of flight. Dkt. No. 27 at 9. But while "serious risk of flight" may trigger a detention *hearing*, 18 U.S.C. § 3142(f)(2)(A), the inquiry for a court considering a detention *order* is "after a hearing pursuant to [§ 3142(f)], [whether] the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). This inquiry turns on the § 3142(g) factors.

### 1. Nature and Seriousness of the Offense Charged

As detailed above, Mr. Subil is charged with three counts related to the interstate transportation of stolen property. *See* Dkt. No. 3; 18 U.S.C. §§ 371, 2314. On the one hand, the crimes are very serious in nature; on the other hand, these are purely economic crimes. While the Government notes the "significant" impact on the seafood industry (Dkt. No. 28 at 7), the offenses do not implicate Mr. Subil in any violence, crime of violence, terrorism, or involve a minor victim or a controlled substance, firearm, explosive, or destructive device. 18 U.S.C. § 3142(g)(1). Further, the offenses do not carry a mandatory minimum sentence.

---

Authority is divided on whether a court's detention analysis under §§ 3142(e) and (g) is limited by the basis for the detention hearing in § 3142(f). *See United States v. Cobix-Espinoza*, No. C23-0002, 2023 WL 1860982, at *3–8 (E.D. Ky. Feb. 9, 2023) (describing two primary approaches). Under the "*Holmes* interpretation," once a hearing is granted on *any* basis, a court may consider both risk of nonappearance and safety. *United States v. Holmes*, 438 F. Supp. 2d 1340, 1351 (S.D. Fla. 2005). Under the "*Himler* interpretation," the court's analysis is limited by the basis for the hearing. *Himler*, 797 F.2d at 160.

Here, Mr. Subil may have been eligible for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(D), given his criminal history. *See* Dkt. No. 13 at 2–7. However, in its motion for detention, the Government did not assert this basis for the hearing, nor did it assert "safety of any other person and the community" as a ground for detention. Dkt. No. 10 at 2. And in its response to the Motion for Review, the Government argues only that "no conditions of release will reasonably assure [Mr. Subil's] appearance." Dkt. No. 28 at 7. Still, the Government appears to have raised safety as a ground for detention at the hearing. *See* Dkt. No. 17 at 5–6 (referring to Mr. Subil's "risk to the community" and "danger" posed by his release).

It appears to the Court that the Government may have waived safety as a ground for detention. However, because the record is unclear, and because Mr. Subil did not object to the Government arguing the safety issue at the hearing, the Court will address both risk of nonappearance and safety.

1  Therefore, the Court finds that the nature and seriousness of the offense charged weighs
2  neither in favor nor against release.

3  **2.      Weight of the Evidence**

4  The Government describes the evidence against Mr. Subil as "extensive." Dkt. No. 28 at
5  8; *see also id*. at 2–4; Dkt. No. 1 (complaint). The evidence includes phone recordings including
6  a person believed to be Mr. Subil discussing shipments of seafood, surveillance images showing
7  Mr. Subil with the alleged stolen seafood in Florida, and bank records showing the wiring of
8  money into the bank account of Mr. Subil's business. Dkt. No. 28 at 8. Mr. Subil contests the
9  allegations, chiefly identifying another individual as responsible. Dot. No. 29 at 3–4. Despite all
10 the evidence the Government has and may ultimately bring to bear in this case, Mr. Subil is
11 presumed innocent before trial, and nothing in the Court's analysis may be construed as
12 modifying or limiting that presumption. 18 U.S.C. § 3142(j). Further, the Ninth Circuit has
13 repeatedly declared that the weight of the evidence is the least important factor, and the statute
14 neither requires nor permits a pretrial determination of guilt. *Gebro*, 948 F.2d at 1121; *see also*
15 *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008); *United States v. Winsor*, 785 F.2d 755,
16 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.

17 Therefore, while the Court finds that the weight of the evidence weighs in favor of
18 detention, it treats this factor as the least important.

19 **3.      The History and Characteristics of Mr. Subil**

20 At the hearing and in its papers, the Government focuses primarily on Mr. Subil's lack of
21 ties to the Western District of Washington and his criminal history. Dkt. No. 17 at 6–8; Dkt. No.
22 28 at 8–9. The Government also argues that Mr. Subil purchased a one-way ticket to Colombia
23 after he discovered the investigation, evincing an intent to flee prosecution. Dkt. No. 17 at 7–8.
24 The Court addresses each in turn.

Under the Act, ties to a "community" include "both the community in which the charges are brought and also a community in the United States to which the defendant has ties." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Mr. Subil is 51 years old and has lived in the United States his entire life. Dkt. No. 13-1 at 1–2. Specifically, he has resided in South Florida since 1975. *Id*. at 2. He has extensive family in the area, including his parents, his siblings, and his children, all of whom are United States citizens.[5] *Id*. Mr. Subil also resides with his wife, who has a pending asylum petition (and cannot leave the country without jeopardizing her status), and he helps to support his elderly parents and his grandchildren. Dkt. No. 17 at 9. Since 2020, Mr. Subil has owned and operated Global Supply, a meat and seafood business, which is a confirmed active corporation in Florida. *Id*. Mr. Subil states that he has never traveled outside the United States and denies any foreign assets. Dkt. No. 17 at 9; Dkt. No. 13-1 at 3. These facts demonstrate extensive ties to the United States and his home in the Southern District of Florida, where he could be monitored pending trial in this District.

While Mr. Subil has an extensive criminal history and a pending charge in Florida for driving under the influence, his most recent conviction is 10 years old, and most of his convictions are decades old. Dkt. No. 13 (sealed) at 2–7. The most recent violent crime appears to be a robbery conviction from 2002. *Id*. at 5. The Government correctly points out that Mr. Subil's history includes crimes of fraud and crimes of dishonesty (Dkt. No. 28 at 8–9) as well as instances of noncompliance with probation and supervision (Dkt. No. 17 at 6). That history gives the Court pause and strongly cautions against straight release. But for all of Mr. Subil's prior contacts with the legal system, there is only one instance of a failure to appear in 2007 and there are no details known about the alleged failure or the underlying offense. Dkt. No. 13 at 6.

---

[5] Mr. Subil's wife and father traveled from Miami to appear at the detention hearing. Dkt. No. 17 at 8–9.

Moreover, the criminal history does not demonstrate that there are *no* conditions, such as GPS monitoring, that would reasonably assure Mr. Subil's appearance for this matter.

Finally, central to the magistrate judge's order was the fact that Mr. Subil apparently purchased a one-way ticket to Columbia one day after becoming aware of a possible criminal investigation. Dkt. No. 15 at 2. However, in his Motion for Review, Mr. Subil further explains his ticket to Colombia: he was to meet with suppliers of lobster for his seafood business, on a trip that was in planning for months. Dkt. No. 27 at 7. He has no family in Colombia. *Id.* at 11. In addition, Mr. Subil provides new information regarding how he had knowledge of a potential criminal investigation as early as January 25, 2023, when his alleged co-conspirators were stopped by law enforcement. *Id.* at 5–6. Even the Government acknowledges that Mr. Subil made several calls to the Snohomish County Police, attorneys in the area, and provided bail money for his alleged co-conspirators after they were stopped on January 25, 2023. Dkt. No. 28 at 3. This was more than 20 days before he purchased the plane ticket on February 18, 2023. *Id.* at 4. It is also notable that despite his history of fraud and dishonesty, including the use of fake aliases, Mr. Subil purchased the ticket with his exact name and date of birth instead of hiding his travel activity. Dkt. No. 1 at 29. He carried no false identification. Dkt. No. 27 at 11. Further, Mr. Subil has already surrendered his passport to the Government. Dkt. No. 17 at 9. And even with knowledge of the attempted trip to Columbia, Pretrial Services in both the Southern District of Florida and the Western District of Washington recommended release with conditions. Dkt. No. 13-1 at 10–11; Dkt. No. 13 at 7–8.

Therefore, the Court finds that Mr. Subil's history and characteristics weigh in favor of release.

4. **Danger to Any Person or the Community**

The Government contends that Mr. Subil is a "risk to the community" because of the financial impact on the victim in this matter. Dkt. No. 17 at 5; Dkt. No. 28 at 9. The Government

also contends, without explanation, that Mr. Subil poses a danger to any person who may purchase the stolen seafood. Dkt. No. 17 at 5–6; Dkt. No. 28 at 9. As discussed above, however, Mr. Subil is charged only with economic crimes that involve the possession and transportation of stolen property. There is no allegation that Mr. Subil threatened anyone or used violence to carry out the alleged scheme. *See supra* Section IV.B.1.

Therefore, the Court finds that a consideration of danger to any person or the community weighs in favor of release.

### IV.    CONCLUSION

For the reasons explained above, the Court finds that the Government has not met its burden by a preponderance of the evidence that there is no combination of conditions of release that will reasonably assure Mr. Subil's appearance.

The Court also finds that the Government has not met its burden by clear and convincing evidence that there is no combination of conditions of release that will reasonably assure the safety of any other person and the community.

Accordingly, Mr. Subil's Motion for Review and Revocation of Magistrate Judge's Detention Order (Dkt. No. 27) is GRANTED, and the Detention Order (Dkt. No. 15) is REVOKED. The Court concludes that the conditions recommended by Pretrial Services along with the additional conditions proposed by Mr. Subil will reasonably assure Mr. Subil's appearance. Therefore, the Court REFERS the Motion to the Magistrate Judge on duty for the purpose of releasing Mr. Subil and issuing an appearance bond that shall include the following:

1) The six conditions recommended in the Pretrial Report of the Western District of Washington (Dkt. No. 13 at 8).

2) Mr. Subil shall refrain from the use of alcohol, or any use of narcotic drug or other controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner.

3) Mr. Subil shall submit to substance abuse testing and/or treatment and contribute to the cost of services rendered based on ability to pay, as determined by Pretrial Services.

4) Mr. Subil shall participate in the location monitoring program with Active Global Positioning Satellite technology. Mr. Subil shall also comply with a curfew as directed by the location monitoring specialist. Mr. Subil shall abide by all program requirements, and must contribute towards the costs of the services, to the extent financially able, as determined by the location monitoring specialist. The location monitoring specialist will coordinate Mr. Subil's release with the U.S. Marshals.

5) Any other conditions the Magistrate Judge or Pretrial Services for either the Western District of Washington or the Southern District of Florida deems appropriate.

Dated this 7th day of June 2023.

Tana Lin
United States District Judge