UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAVID SUBIL,<br>Defendant. | CASE NO. 2:23-cr-00030-TL<br><br>ORDER ON MOTION TO SUPPRESS SEARCH OF RESIDENCE AND DEVICES PURSUANT TO *FRANKS V. DELAWARE* |

This matter is before the Court on Defendant David Subil's Motion to Suppress Search of Residence and Devices Pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978). Dkt. No. 172. Having reviewed the motion, the Government's opposition (Dkt. No. 183), Mr. Subil's reply (Dkt. No. 195), and the relevant record, the Court DENIES the motion.

## I. BACKGROUND

Mr. Subil is charged with Conspiracy to Commit Interstate Transportation of Stolen Property, Transportation of Stolen Property, Conspiracy to Commit Money Laundering, and Money Laundering. Dkt. No. 110 (Third Superseding Indictment). The Court assumes the

Parties' familiarity with the general facts of the case. *See generally* Dkt. No. 1 (Complaint against Mr. Subil, No. MJ23-74); Dkt. No. 1 (Complaint against Mr. Sanchez Abreu, No. MJ23-373); Dkt. No. 110; Dkt. No. 170 (Subil Motion to Dismiss); *see* Dkt. No. 172 at 2–3; and Dkt. No. 183 at 2–5. All facts relevant to this motion are incorporated in the Court's analysis below.

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(C) requires that a request for "suppression of evidence" be raised "by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Under the exclusionary rule, evidence obtained in violation of a person's Fourth Amendment rights, including any "fruit of the poisonous tree," is excluded from a criminal trial. *United States v. Cervantes*, 703 F.3d 1135, 1138–39 (9th Cir. 2012); *see also Alderman v. United States*, 394 U.S. 165, 171 (1969) ("The exclusionary rule . . . excludes from a criminal trial any evidence seized from the defendant in violation of his Fourth Amendment rights. Fruits of such evidence are excluded as well.").

"The Fourth Amendment dictates that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *United States v. Fisher*, 56 F.4th 673, 682–83 (9th Cir. 2022) (quoting U.S. Const. amend. IV). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 683 (omission in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

An affidavit in support of a search warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. at 171. However, "a criminal defendant has the right to challenge the veracity of

statements made in support of an application for a search warrant." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). "To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,]' and second, that the false or misleading statement or omission was material, *i.e.*, 'necessary to finding probable cause.'" *Id.* (alteration in original) (quoting *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)). "If both requirements are met, 'the search warrant must be voided and the fruits of the search excluded . . . .'" *Id.* (quoting *Franks*, 438 U.S. at 156). "When requesting a *Franks* hearing based on allegations of material false statements or omissions in an affidavit supporting a search warrant, a defendant must make a 'substantial preliminary showing'" of the two requirements. *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011) (quoting *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008)).

## III. Discussion

Mr. Subil argues that the Court should set a "*Franks* hearing" because he has made a showing that Agent Spitzer recklessly omitted facts from the affidavit and that had the omission been included, the warrant would lack probable cause. Dkt. No. 172 at 5–9. In addition to his *Franks* analysis, he provides several additional separate arguments as to why evidence seized as a result of the search should be suppressed.[1] *Id.* at 9–16. The Court will address each argument in turn.

//

//

[1] The relief Mr. Subil seeks in the conclusion of his motion is that "he should be granted a *Franks* hearing." However, several of his suppression arguments appear to be separate from his *Franks* analysis. *See* Dkt. No. 172 at 9–16.

**A. *Franks* Analysis**

Based on an alleged violation of the Fourth Amendment, Mr. Subil moves to suppress any evidence obtained from the search warrant obtained by Homeland Security Investigations ("HSI") Special Agent David Spitzer of Mr. Subil's residence and the devices seized from his home. Dkt. No. 172 at 1.

**1. Agent Spitzer Recklessly Omitted Facts from the Affidavit**

Under *Franks*, a defendant must first show "by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application." *Perkins*, 850 F.3d at 1116 (citing *Martinez-Garcia*, 397 F.3d at 1214). "A negligent or innocent mistake does not warrant suppression." *Id.* A warrant affidavit "must set forth particular facts and circumstances . . . so as to allow the magistrate to make an *independent* evaluation of the matter." *Id.* (omission in original) (quoting *Franks*, 438 U.S. at 165). "An officer presenting a search warrant application has a duty to provide, in good faith, all relevant information to the magistrate." *Id.* (citing *United States v. Hill*, 459 F.3d 966, 971 n.6 (9th Cir. 2006)).

The application for the search warrant at issue was attested to by Agent Spitzer on March 6, 2023. Dkt. No. 172-2 (Spitzer Residence Warrant) at 24. Three weeks prior, Mr. Subil had been arrested and had a Samsung Galaxy Z Flip Phone, an Apple iPhone, and an Apple iPad seized from him. Dkt. No. 172 at 2. Mr. Subil argues that Agent Spitzer's affidavit in support of the warrant to search Mr. Subil's residence recklessly omitted material facts because while the affidavit asserted that HSI agents' search incident to arrest led to the seizure of "'a' cellular device," it does not mention that the search also led to the seizure of another cell phone and a tablet. *Id.* at 7. Mr. Subil argues that the seizure of such evidence three weeks prior and omission of two of the three confiscated devices misled the magistrate judge and that such an omission

was a reckless disregard for the truth. *Id*. In support of his arguments, he attaches Agent Spitzer's Residence Warrant affidavit as an exhibit. *See* Dkt. No. 172-2. In response, the Government labels the omission as "inadvertent" and an "unintended oversight." Dkt. No. 183 at 1, 8. At the same time, the Government concedes that the "warrant affidavit should have" included reference to the second cell phone and the tablet. *Id*. at 7. For the reasons stated below, the Court finds that omission by Agent Spitzer demonstrates a reckless disregard for the truth.

Agent Spitzer's 24-page affidavit gives intricate details about the forms of communication Mr. Subil allegedly used in order to further his scheme, including phone calls and emails. Dkt. No. 172-2 at 9 ¶¶ 6–7; 12–13 ¶¶ 26, 28. Moreover, Agent Spitzer's affidavit emphasized that such communication was likely conducted through both cell phones and computers. *Id*. at 10 ¶ 10; 11 ¶¶ 15, 19; 16 ¶ 45; 17 ¶ 56. It is evident from Agent Spitzer's request that he believed that in order to get a full picture of the alleged crimes, law enforcement would need to confiscate various forms of electronic communication and devices from Mr. Subil. *Id*. at 28, 37. Yet when it came time to state in his affidavit what had already been seized from Mr. Subil, Agent Spitzer was totally silent as to two of the devices. *Id*. at 19 ¶ 65. The Government attempts to downplay the omission by arguing that it was inadvertent and unintentional. Dkt. No. 183 at 1, 8. But attached to the Government's brief is a declaration from Agent Spitzer himself (Dkt. No. 183-1 (Spitzer Decl.)) in which he could have asserted that the omission was an oversight; yet, Agent Spitzer provides no such explanation, even though the motion focuses heavily on the intentional and reckless omission of this information by him. *See generally id*. Finally, the Court is also unconvinced that Agent Spitzer simply forgot to mention the omitted devices. One day after he submitted the Residence Warrant affidavit, he submitted a separate warrant ("Device Warrant") affidavit to search the exact devices he omitted from the first affidavit. *See* Dkt. No. 172-2 at 6 (warrant application date reflecting March 6, 2023); Dkt.

No. 172-3 (Spitzer Device Warrant) at 2 (warrant application date reflecting March 7, 2023). Given the importance of the three devices seized by HSI agents at the Miami airport, it is not plausible that Agent Spitzer's decision to explicitly mention "a device" in the Residence Warrant affidavit, while simultaneously putting together a warrant for that device *and the remaining two devices*, was simply an oversight. Indeed, the Government concedes in its opposition that this information should have been included in the warrant. Dkt. No. 183 at 7 ("The warrant affidavit should have said as much."). In total, the Court finds that the omission was a reckless disregard for the truth; therefore, Mr. Subil has satisfied the first prong of the *Franks* test.

**2. The Omitted Fact Was Not Material**

Under the second step of a *Franks* analysis, "the question is whether the omitted fact is 'material'; that is, whether it is 'necessary to the finding of probable cause.'" *Perkins*, 850 F.3d at 1120 (quoting *Franks*, 438 U.S. at 156). "The key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.'" *Id.* (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)). "Probable cause to search a location exists if, based on the totality of the circumstances, there is a 'fair probability' that evidence of a crime may be found there." *Id.* (citing *Hill*, 459 F.3d at 970).

Mr. Subil argues that the omitted fact was material and if Agent Spitzer included it in his affidavit, "the warrant application would not demonstrate the level of 'probable cause' needed to justify the search or his home and 'any' electronic devices within." Dkt. No. 172 at 6. In support of this argument, he asserts that Agent Spitzer knew that one of the phones already in police custody was the primary phone allegedly used by Mr. Subil, but that Agent Spitzer failed to disclose this to the magistrate judge. *Id.* at 7; Dkt. No. 195 at 1. As such, Mr. Subil argues that the majority of the evidence needed for the investigation to continue was already in the possession of police, thereby misleading the magistrate judge into thinking the primary devices

were outstanding, and had the omitted fact been included, there would be no probable cause. Dkt. No. 172 at 7; Dkt. No. 195 at 1.

There is one major flaw in Mr. Subil's argument: at the time the affidavit was written, Agent Spitzer had not yet submitted the Device Warrant affidavit to search the previously seized devices, meaning he had not yet accessed the devices in order to know the contents within them. Mr. Subil presents no evidence that Agent Spitzer knew the phone number associated with either phone seized at the Miami airport. Although Mr. Subil asserts in his declaration that the HSI officers unlocked his phone and reviewed it (Dkt. No. 172-1 (Subil Decl.) ¶ 5), he provides no evidence that these HSI officers communicated to Agent Spitzer that the phone number 786-403-3168 belonged to one of the cell phones seized from Mr. Subil. A speculative assertion without any support does not convince the Court that Mr. Subil has met his burden of preponderance of the evidence. But even assuming arguendo Agent Spitzer did know the phone number for one of the phones when he applied for the warrant, Mr. Subil still would not be able to meet his burden.

Mr. Subil fails to acknowledge that, despite HSI seizing two phones, Agent Spitzer's affidavit documented five different phone numbers allegedly associated with Mr. Subil and the alleged conspiracy. One of these numbers is the one that Mr. Subil asserts is the primary number for the investigation—786-403-3168. Dkt. No. 172-2 at 11 ¶ 15. Agent Spitzer claimed that two phone numbers—800-674-3635 and 888-712-1983—were provided to Alexander Gorelik by Mr. Subil as points of contact for Mr. Subil. *Id.* at 10 ¶ 10. Additionally, the phone number 208-509-8598 was found on a fake bill of lading, with the message "call Chris"—a pseudonym Agent Spitzer claimed Mr. Subil used in emails to Mr. Gorelik. *Id.* at 9 ¶ 6, at 11 ¶ 19. Lastly, another number allegedly provided by Mr. Subil is 833-231-1955. *Id.* at 31 ¶ 69. Bob Interian, the owner of a market that sold seafood allegedly purchased from Mr. Subil, told Agent Spitzer this number was listed on a business card given to him by Mr. Subil as a way to contact him. *Id.* Therefore,

even if the warrant application stated that a total of two phones had been seized, the magistrate judge likely would have reasonably believed it to be fairly probable that Mr. Subil's home still contained additional cell phones not yet confiscated.[2] Mr. Subil offers no argument or explanation as to the outstanding phone numbers or why there was no probable cause to believe that there were additional laptops or computers in his home, which is particularly important given the warrant allowed for the seizure of "data storage devices" (Dkt. No. 172-2 at 25). Instead, Mr. Subil argues that had the omitted information been included, the magistrate judge likely would have limited the search warrant to only certain devices, rather than "any" electronic device. Dkt. No. 172 at 10; Dkt. No. 195 at 2. Mr. Subil provides no basis to believe this. In sum, the Court finds that had the omitted facts been included, the magistrate judge still would have found probable cause. Therefore, Mr. Subil has failed to satisfy the second prong of the *Franks* test.

Accordingly, because Mr. Subil has failed to satisfy the second prong of the *Franks* test, the Court denies his request for a *Franks* evidentiary hearing.

### 3. Had the Warrant Included the Omission, It Would Not Have Been Overbroad

Mr. Subil also argues that another reason the warrant would not meet probable cause had the omitted information been included is because the warrant would have been overbroad. Dkt. No. 172 at 10. He asserts the Residence Warrant was overbroad because it allowed for the

[2] In the Residence Warrant issued on March 6, 2023, Agent Spitzer provided that Mr. Gorelik told Agent Spitzer that he tried to call the numbers 800-674-3635 and 888-712-1983, but that the numbers "did not work." Dkt. No. 172-2 at 10 ¶ 10. Agent Spitzer also provided in the Residence Warrant affidavit that these numbers "do not appear on the Safeway company website." *Id*. The next day, in the Device Warrant affidavit, Agent Spitzer wrote that these numbers "d[id] not appear to be real and are not listed on Safeway's website." Dkt. No. 172-3 at 13 ¶ 21. In neither his motion nor reply does Mr. Subil address these facts. Regardless, the information from the Residence Warrant alone does not give any indication that on that day, Agent Spitzer had already confirmed that these two numbers were never active phones containing fruits of the alleged crimes. Moreover, even if Mr. Subil were to raise these facts and assert these numbers never existed, it would make no difference to the Court's analysis, as that would still leave one phone outstanding at the time the Residence Warrant was issued.

seizure of "'any digital devices or other electronic storage media, used to commit, further or store evidence as it relates to the theft and interstate transportation of stolen seafood' [and] did not limit the scope of the warrant in any true sense." *Id*. Here, Mr. Subil asserts that had the omission been disclosed, it would have caused the magistrate judge to limit the scope of the warrant. Specifically, Mr. Subil argues that the affidavit misleadingly put forth information that Mr. Subil's sent emails and accessed purchase-order software related to the alleged crime, without disclosing that the phone used for these tasks had been seized three weeks prior. *See id*. at 11. These arguments are unconvincing because, as discussed above, there is no evidence that Agent Spitzer knew what was on the devices that had already been seized. In support of his argument that the Residence Warrant would have been overbroad with the omitted fact, Mr. Subil cites *Matter of Residence in Oakland California*, 354 F. Supp. 3d 1010, 1014 (N.D. Cal. 2019). But that case is not analogous to the instant one. In *Matter of Residence*, the court found that the warrant request was overbroad for two reasons: (1) the warrant asked to "compel 'any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to unlock the device using biometric features,'" despite there only being two suspects to the allegations; and (2) the warrant asked to compel the seizure of any electronic device, including devices belonging to non-suspects who happened to be present at the home at the time of the search. 354 F. Supp. 3d at 1014. These facts are distinguishable from the facts here, as the Residence Warrant allowed only for the seizure of any digital device that police reasonably believed was used to "commit, further, or store evidence" related to the instant investigation, not the seizure of devices from individuals who had nothing to do with the investigation.

Moreover, even with the omitted information included, the evidence provided in the Residence Warrant affidavit supported such a broad request. As the Government points out, the

alleged conduct utilized a wide range of electronic mechanisms to further the scheme, including: fraudulent email addresses (Dkt. No. 172-2 at 9 ¶¶ 6–7); electronic purchase order software for creating fraudulently doctored purchase orders (*id*. at 9 ¶¶ 7–8); fraudulent "Safeway" web domains (*id*. at 10 ¶¶ 9–11); several different phone numbers (*id*. at 9 ¶ 6; 10 ¶ 10; 15 ¶ 11, 19; 15 ¶ 41); and electronic wire-transfer payments (*id*. at 8 ¶ 4). The affidavit provided evidence that Mr. Subil lived at the residence and that the residence had ties to Mr. Subil's business, devices, and bank records. *See id*. at 15–17 ¶¶ 41–57. Therefore, the magistrate judge rightfully believed that there was probable cause that any electronic devices found within the home that the agents believed to be associated with the scheme could be seized.

**B. Request to Suppress Based on Concurrent Judicial Warrant Efforts**

Mr. Subil also argues that "any fruits stemming from the Residential SW should be suppressed" because Agent Spitzer did not notify the magistrate judge of his concurrent efforts to obtain the Device Warrant in the Western District of Washington. Dkt. No. 172 at 9–10. It is undisputed that the Residential Warrant was submitted the day before the Device Warrant. *Id*. at 2–3; Dkt. No. 183 at 2. In support of his argument, Mr. Subil relies on *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2008) (en banc) (per curiam), *overruled in part on other grounds by Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17 (2017), asserting that the holding in that case requires suppression of evidence in the instant matter. Dkt. No. 172 at 9–10.

In *Comprehensive Drug Testing*, the Ninth Circuit held that "while the government is free to pursue warrants . . . in whichever judicial district is appropriate in light of the location of the information sought, it must fully disclose to each judicial officer prior efforts in other judicial fora to obtain the same or related information, and what those efforts have achieved." 621 F.3d at 1175. But as the Government argues, it did not engage in any prior efforts to obtain the

Residence or Device warrants before Agent Spitzer submitted his affidavit to the magistrate judge in the Southern District of Florida. Dkt. No. 183 at 11. As such, there could be no disclosure by Agent Spitzer of "what [his] efforts ha[d] achieved," as required by *Comprehensive Drug Testing*. Mr. Subil attempts to add language to the *Comprehensive Drug Testing* opinion by asserting that the Government must also notify other judicial officers of "concurrent efforts to seek the same or related information." Dkt. No. 172 at 10. But *Comprehensive Drug Testing* only requires the disclosure of prior efforts. *Comprehensive Drug Testing, Inc.*, 621 F.3d at 1175. Therefore, the Court denies Mr. Subil's request to suppress evidence on this basis.

**C. The Decision to Seek the Residential Warrant**

Mr. Subil argues that Agent Spitzer's decision to seek the Residential Warrant was a direct result of what he asserts was an illegal search of his cell phone by Miami HSI agents. Dkt. No. 172 at 12–13. Mr. Subil seems to believe that emails and online purchase orders were extracted from the seized devices before the search warrant was issued (*see id*. at 14), but he offers no evidence for such a claim. Although his declaration addresses the Miami HSI agents unlocking his phone and determining the phone number associated with it, it makes no mention of the agents viewing emails or online purchase orders. *See* Dkt. No. 172-1. As such, Mr. Subil's assertions are merely speculation. Further, as previously discussed in detail above, *see supra* III.A.3., Agent Spitzer believed there to be a wide array of electronic-device evidence at Mr. Subil's home, based upon information gathered during the investigation, including at least one phone that had not yet been seized and a computer. This information was detailed in the Complaint, which was issued prior to Mr. Subil's arrest and the seizure of the phones incident to his arrest. *See generally* Dkt. No. 1. Therefore, there is no evidence that points to the investigation occurring because of the seizure and alleged pre-warrant search of the three devices

at the Miami airport. Accordingly, Mr. Subil's request to suppress evidence on this basis is denied.

**D. The Agents Did Not Exceed the Scope of the Warrant**

Lastly, Mr. Subil argues that the agents exceeded the scope of the warrant because they confiscated "personal, financial, and tax documents, along with pictures and other items that dated back to 2020" despite the warrant limiting the search and seizure to a "two-month time span." Dkt. No. 172 at 14. The Government correctly points out three flaws in Mr. Subil's arguments. First, the portion of the warrant Mr. Subil references states that the agents could search the premises for "any Computer and Data Storage Device *as it relates* to the theft and subsequent interstate transportation of stolen seafood between December 2022 and February 2023" (emphasis added). This means that the search was not limited to items dated within a two-month time span, but items that related to *the allegations from* that two-month (or, more accurately, three-month) time span. Simply because items seized were from as far back as 2020 does not mean that they did not relate to the alleged crimes from late 2022 and early 2023. Second, the Government points out that Mr. Subil fails to specify which evidence, exactly, was outside the scope of the search and why. Dkt. No. 183 at 12. Instead, Mr. Subil points generally to documents "that dated back to 2020" without explaining why they did not relate to the alleged crimes from the specified time frame. *See* Dkt. No. 172 at 14. Finally, the Government argues that Mr. Subil's recitation of the search warrant's terms omits the fact that the warrant also allowed for the seizure of other categories of evidence related to occupancy of the residence and ownership of computer equipment, and that such an allowance did not have a time limitation on it. *See* Dkt. No. 183 at 12; Dkt. No. 172-2 at 38. Accordingly, the Court finds the agents did not exceed the scope of the search warrant and, therefore, denies Mr. Subil's request to suppress evidence on such a basis.

## IV. CONCLUSION

Accordingly, Mr. Subil's Motion to Suppress Search of Residence and Devices Pursuant to *Franks v. Delaware* (Dkt. No. 172) is DENIED.

Dated this 10th day of November, 2026.

Tana Lin
United States District Judge