UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff,<br>v.<br>DAVID SUBIL, Defendant. | CASE NO. 2:23-cr-00030-TL<br><br>ORDER ON MOTION TO SUPPRESS FOR VIOLATION OF 18 U.S.C. § 3103A(B) AND LACK OF PARTICULARITY |

This matter is before the Court on Defendant David Subil's Motion to Suppress Evidence for Violation of 18 U.S.C. § 3103a(b) and Lack of Particularity. Dkt. No. 174. Having reviewed the motion, the Government's opposition (Dkt. No. 185), Mr. Subil's reply (Dkt. No. 193), and the relevant record, and finding oral argument unnecessary, *see* Local Criminal Rule 12(b)(12), the Court DENIES the motion.

## I. BACKGROUND

On February 18, 2023, Homeland Security Investigations ("HSI") was notified that Mr. Subil had booked a 10:32 a.m. flight departing that morning from the Miami International

Airport to Medellin, Colombia. Dkt. No. 1 (Complaint against Mr. Subil) ¶ 79. That same day, the Government filed a complaint charging Mr. Subil with one count of Conspiracy to Commit Interstate Transportation of Stolen Property and obtained a warrant for Mr. Subil's arrest. *See generally id.*; Dkt. No. 2 (arrest warrant). Miami HSI agents arrested Mr. Subil at the Miami International Airport and, incident to that arrest, seized three electronic devices from his person: two cell phones and an Apple iPad. Dkt. No. 174-1 (Search Warrant and Application) ¶¶ 6, 90.

On March 7, 2023, HSI Special Agent David Spitzer submitted an application to the Honorable S. Kate Vaughan, United States Magistrate Judge, for a warrant to search the three electronic devices. *Id.* at 2. The application identified that Mr. Subil was charged with "Transportation of Stolen Goods" under "18 USC Section 2314." *Id.* The application was sought under Federal Rule of Criminal Procedure 41(c) and proposed a search Agent Spitzer believed would lead to evidence of the alleged crime; "contraband, fruits of crime, or other items illegally possessed"; and "property designed for use, intended for use, or used in committing a crime." *Id.* Also on the application was a box checked requesting delaying notice to Mr. Subil for 90 days, specifically, until June 5, 2023, pursuant to 18 U.S.C. § 3103a. *Id.* Attached to the application was an affidavit from Agent Spitzer outlining the relevant factual allegations against Mr. Subil; Agent Spitzer's relevant training, experience, and explanation of terms, electronics analysis, and search techniques; and attachments describing the seized items. *See id.* at 3–52. One of the attachments—Attachment B—outlined the parameters of what law enforcement were allowed to seize. *See id.* at 51–52. Judge Vaughan signed the warrant and found, "[p]ursuant to 18 U.S.C. § 3103a(b) . . . that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize[d] the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized . . . until, the facts justifying, the later specific date of 06/05/2023." *Id.* at 53.

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(C) requires that a request for "suppression of evidence" be raised "by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Although the Fourth Amendment "protects the right to be free from 'unreasonable searches and seizures,' . . . it is silent about how this right is to be enforced." *Davis v. United States*, 564 U.S. 229, 230 (2011). "To supplement the bare text, [the Supreme Court] created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Id.* at 233–32. "[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

## III. Discussion

Mr. Subil brings the instant motion arguing that (1) the application and warrant failed to comply with the statutory requirements of 3103a(b); and (2) the warrant lacks particularity "because it fails to limit the search of the devices to [the] relevant time period and crime being investigated." Dkt. No. 174 at 1; *see also* Dkt. No. 193 at 1. The Court will discuss each in turn.

### A. The Applicability of Section 3103a(b) and Federal Rule of Criminal Procedure 41

In the instant matter, Mr. Subil argues that the Government's warrant violated the provisions of 18 U.S.C. 3103a(b) and the Government did not comply with the delayed notice requirements under Section 3103a, meaning the fruits of the search should be suppressed. Dkt.

No. 174 at 1; Dkt. No. 193 at 1. The Government argues that Section 3103a is irrelevant because it did not delay notice and complied with notice requirements under Federal Rule of Civil Procedure 41. Dkt. No. 185 at 3–4. Mr. Subil argues in reply that the Government does not meet the second requirement of Section 3103a(b) because the warrant did not prohibit the seizure of tangible property and that he did not challenge the warrant under Rule 41. Dkt. No. 193 at 3. The Court will address these arguments in turn.

**1. Rule 41**

Rule 41 states that the officer who executes a search warrant "must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C). Rule 41 further provides that "[u]pon the government's request, a magistrate judge—or if authorized by Rule 41(b), a judge of a state court of record—may delay any notice required by this rule if the delay is authorized by statute." Fed. R. Crim. P. 41(f)(3). One such statute Rule 41 refers to regarding the authorization of delay is 18 U.S.C. § 3103a(b). *See In re Use of a Cell-Site Simulator to Locate a Cellular Device Associated with One Cellular Tel. Pursuant to Rule 41*, 531 F. Supp. 3d 1, 8 (D.D.C. 2021).

**2. Section 3103a**

Pursuant to 18 U.S.C. §3103a, "a warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States. 18 U.S.C. §3103a(a). As stated, *see supra* Section III.A.1., notice of the execution of a warrant is governed under Federal Rule of Criminal Procedure 41(f)(1)(c). Section 3103a(b) states that notice may be delayed if three conditions are met:

> (1) the court finds reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result (as defined in section 2705, except if the adverse results

> consist only of unduly delaying a trial); (2) the warrant prohibits the seizure of any tangible property, any wire or electronic communication (as defined in section 2510), or, except as expressly provided in chapter 121, any stored wire or electronic information, except where the court finds reasonable necessity for the seizure; and (3) the warrant provides for the giving of such notice within a reasonable period not to exceed 30 days after the date of its execution, or on a later date certain if the facts of the case justify a longer period of delay.

18 U.S.C. § 3103a(b). "Adverse result is defined under 18 U.S.C. § 2705, *inter alia,* as 'flight from prosecution,' 'destruction of or tampering with evidence,' or 'otherwise seriously jeopardizing an investigation.'" *In re Use of a Cell-Site Simulator*, 531 F. Supp. 3d at 8 (quoting 18 U.S.C. § 2705(2)(B), (C), (E)). Warrants issued pursuant to Section 3103a are referred to as "sneak and peek" warrants that "allow agents to conduct searches secretly (whether physically or virtually), to observe or copy evidence, and to depart the location searched, generally without taking any tangible evidence or leaving notice of their presence." *American Civil Liberties Union v. U.S. Dep't of Just.*, 265 F. Supp. 2d 20, 24 (D.D.C. 2003); *see also United States v. Mikos*, 539 F.3d 706, 709 (7th Cir. 2008) ("sneak and peak" warrants permit inspection but not seizure).

**3. Delayed Notice**

**a. The Government Complied with Rule 41**

Although Mr. Subil asserts that he has not brought a challenge under Rule 41 and only raises a challenge under Section 3103a, Rule 41 and Section 3103 are intertwined. The "basis for the [Government's] search [warrant]" was pursuant to Rule 41. Dkt. No. 174-1 at 2. The text of Rule 41 only discusses that notice may be delayed and does not provide any requirements for when delay is appropriate. Instead, Rule 41 states that notice may be delayed "if the delay is authorized by statute." One such statute, according to a case Mr. Subil relies on, is 18 U.S.C. § 3103a(b). *See In re Use of a Cell-Site Simulator*, 531 F. Supp. 3d at 8. As such, the Court sees Rule 41 and Section 3103a as intertwined. Accordingly, the Court will evaluate the

Government's Rule 41 argument that the analysis stops with Rule 41, and under that rule, it complied with notice requirements.

Regarding notice requirements, the Government argues that it did not delay notice of executing the search warrant because the electronic devices were no longer in Mr. Subil's possession and were instead taken from the HSI office in Blaine, Washington, where the warrant was provided upon execution of the search warrant. Dkt. No. 185 at 4. Additionally, the Government asserts that even though Mr. Subil was the owner of the seized property, Rule 41 does not require notice to be provided to him, given the circumstances. *Id.* at 5 (citing *In re Application of U.S. for Search Warrant for Contents of Electronic Mail and for Ord. Directing Provider of Electronic Communic's Servs. to Not Disclose Existence of Search Warrant*, 665 F. Supp. 2d 1210, 1221 (D. Or. 2009) (finding that "There is no separate requirement that the officer provide the warrant, a receipt, or any other form of notice to the owner of the property" as long as law enforcement otherwise comply with Rule 41)); *United States v. Zacher,* 465 F.3d 336, 339 (8th Cir. 2006) (holding that police complied with North Dakota Rule of Criminal Procedure 41(d), which the court noted was virtually identical to Rule 41(f)(3), when they left a copy of the warrant at FedEx where the subject package was confiscated, instead of needing to give the warrant to the sender or receiver of the package); *United States v. Scully*, 108 F. Supp. 3d 59, 83 (E.D.N.Y. 2015) (finding compliance with Rule 41 where law enforcement served a copy of the warrant on an internet service provider without also providing a copy of the warrant to the subscriber). The instant matter is much more analogous to the cases the Government cites, than those cited by Mr. Subil (discussed below). As such, the Court is convinced that because Mr. Subil's electronic devices were lawfully seized from him incident to arrest and, therefore, no longer in his possession, law enforcement complied with Rule 41 notice requirements when they

"le[ft] a copy of the warrant . . . at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C).

**b. Mr. Subil's 18 U.S.C. § 3103a(b) Arguments Fails**

Even if the Court were to find that Section 3103a was applicable, Mr. Subil's challenge would fail. First, Mr. Subil specifically asserts that the "warrant was issued without a prohibition against the seizure of tangible property in violation of 3103[a]." Dkt. No. 174 at 3; *see also* Dkt. No. 193 at 3. But Mr. Subil ignores the fact that the warrant was clearly not seeking tangible property but, rather, "records and information" and other evidence contained on the subject devices. Dkt. No. 171-4 at 58. The warrant did not seek the subject devices (or tangible property) themselves because the Government had already seized and possessed the devices by the time Agent Spitzer applied for the warrant. *See id*. at 55.

Second, Mr. Subil provides several cases to support his arguments, but those cases describe "sneak and peek" warrants where the subject devices themselves were not in the possession of the Government. For example, in *In re Use of a Cell-Site Simulator*, law enforcement submitted a search warrant application requesting authority to "use a cell-site simulator for 30 days in an effort to locate a specified cellphone number associated with a fugitive." 531 F. Supp. 3d at 3. In *United States v. Andrews*, the search warrant application sought a "surreptitious entry," also known as a "sneak and peak search," into the defendant's home in order to "visually document and inspect the residence, take photographs, and look for evidence of drug trafficking." No. C07-10221-02, 2008 WL 11396782, at *1 (D. Kan. May 16, 2008). Lastly, in *United States v. Espinoza*, the court discussed delayed notice in the context of searching a house for drugs. No. C05-2075-7, 2005 WL 3542519, at *1–2, 4 (E.D. Wash. Dec. 23, 2005). While the cases Mr. Subil cites discuss law enforcement seeking warrants to search property it did not already have, in Mr. Subil's case, law enforcement was already lawfully in

possession of his devices. Mr. Subil provides no authority that is analogous to his set of facts. Third, Mr. Subil seems to argue that some magic words such as "this warrant prohibits the seizure of any tangible property" must be specifically written on the warrant. *See* Dkt. No. 193 at 3. While that certainly would have been better, the warrant is clear that it is not authorizing the seizure of any tangible property as the subject devices that were the focus of the warrant were already in possession of the Government. Indeed, Attachment A to the warrant described the subject devices and clearly stated that they had already been seized during the search incident to arrest of Mr. Subil. *See* Dkt. No. 174-1 at 55. And, in any event, as discussed in Section III.A.3.a., the Government makes clear that it did not delay the type of notice required under Rule 41, meaning Mr. Subil's argument about the requirements of Section 3103a is irrelevant.

As a final matter, the Court finds uncompelling Mr. Subil's argument that Agent Spitzer's checking of the box for requesting delayed notice is further proof that he failed to comply with the statute (Dkt. No. 174 at 6–7). The Government asserts that the checking of this box was likely inadvertent. Dkt. No. 185 at 4 n.1. Given the full context which the Court analyzed above, *see supra* III.A.3.a., the Court agrees. In compliance with Rule 41, which Agent Spitzer prepared the warrant pursuant to, Agent Spitzer gave notice of the search at the time the warrant was issued, therefore, it is logical to conclude that the checking of the delayed notice box was inadvertent.

* * *

Therefore, Mr. Subil's request to suppress the fruits of the warrant because the officers did not comply with 18 U.S.C. 3103a(b) is denied.

//

//

//

### B. The Particularity of the Warrant[1]

The Fourth Amendment requirement has two aspects: particularity and breadth. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id*. (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 856–57 (9th Cir.1991)). "Evidence seized pursuant to illegal general warrants must be suppressed." *United States v. Espinosa*, 827 F.2d 604, 610 (9th Cir. 1987).

Attachment B to the warrant contains three sections that seek the seizure of three types of evidence: (1) substantive evidence specifically relating to Subil's interstate transportation of stolen property; (2) attribution evidence relating to that substantive evidence; and (3) location data for the devices. *See* Dkt. No. 174-1 at 51–52. As an initial matter, the Court interprets Mr. Subil's arguments as only referring to Section 1 of Attachment B of the search warrant. Mr. Subil asserts "Attachment B of the warrant allowed for the search and seizure all manner of records without regard to any time frame." Dkt. No. 174 at 13. Section 2 of Attachment B does not lack a time frame, as it provided that any seized items must be related to "the time of the things described in this warrant [that] were created, edited, or deleted . . . ." Dkt. No. 174-1 at 52. As to Section 3 of Attachment B, which is regarding the seizure of location data, Mr. Subil offers no discussion or argument. *See generally* Dkt. Nos. 174, 193. Lastly, the Government asserts that Section 1 "appears to be the category that Subil takes issue with" (Dkt. No. 185 at 8), and Mr. Subil does not contest this in his reply brief (*see generally* Dkt. No. 193).

---

[1] While Mr. Subil uses the term "overbroad" and "overbreadth" in subheadings for his motion and reply (Dkt. No. 174 at 12; Dkt. No. 193 at 3), he only discusses the issue of particularity.

Relevant to the Court's analysis, Section 1 of Attachment B allowed for "[a]ll records and information on the SUBJECT DEVICES described in A, that relate to violations involving 18 U.S.C. § 2314, Interstate Transport of Stolen Property, those violations involving David SUBIL, and others unknown" and then lists 19 subcategories. Dkt. No. 174-1 at 51–52. Mr. Subil argues that, despite the investigation of the alleged crimes beginning in December 2022, and concluding on the date of Mr. Subil's arrest on February 19, 2023, "[t]he warrant herein allowed a limitless search of the devices seized from the residence far beyond the time frame of the alleged crimes for which there was probable cause." Dkt. No. 174 at 12–13. Additionally, Mr. Subil argues that the warrant's citing of the general crime of 18 U.S.C. § 2314 Interstate Transportation of Stolen Property, and not limiting the devices to searches relating to stolen crab, in which there was probable cause, also resulted in a warrant that lacked particularity. *Id.* at 13–14. The Court will address these arguments, as well as the Government's responses, in turn.

**1. Temporal Limits**

The Government argues that "the warrant specifically limits the types of evidence that can be seized in other ways that ensure the collection will not stray beyond the scope of the government's probable cause or the underlying crimes." Dkt. No. 185 at 9. But the Government does not explain what the "other ways" are.[2]

In assessing whether a provision in a warrant is sufficiently particular, courts consider "whether it would have been 'reasonable' for the government to 'provide a more specific description of the items [to be searched] at that juncture of the investigation.'" *United States v. Holcomb*, 183 F.4th 704, 715 (9th Cir. 2026). In *Holcomb*, the Ninth Circuit found a warrant provision insufficiently particular where "the government was well aware of the relevant time

[2] To the extent the Government is referring to the nineteen subcategories in this section of the warrant, the Court discusses those in the next section of this Order.

period as it was investigating a single incident that took place in a particular location on a specific date." *Id.*; *see also United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (finding warrant not sufficiently particular where the government did not limit the scope of the seizure to a time frame and the government's affidavit indicated it knew when the suspected criminal activity took place). Similarly here, the Government was aware of the relevant time period and was investigating four incidents that occurred over a specific time period that was, in fact, detailed in the affidavit so that it would have been reasonable (and quite easy) for the Government to include a time period in the warrant. Therefore, the Court finds that Section 1 of Attachment B was insufficiently particular.

**2. Specificity of the Crime**

Although Section 1 identified the general statute that Mr. Subil is charged with violating, it did not specify what stolen property, in particular, Mr. Subil was accused of transporting. *See* Dkt. No. 174-1 at 51–52. Mr. Subil argues that Attachment B should have included that he was accused of transporting stolen crab because without such information, the warrant "did not limit the agents' search of the devices to stolen crab." Dkt. No. 174 at 13–14. In response, the Government argues that Attachment B did not need to specify that it was stolen crab that was being transported and that the cases Mr. Subil cites simply "caution that warrants must do more than vaguely reference federal criminal statutes." Dkt. No. 185 at 9. The Government goes on to argue that Attachment B is particular enough because "it cites the specific statute at issue and goes further by providing 19 specific subtypes of evidence that may be seized." *Id.* at 9–10.

But the Ninth Circuit case Mr. Subil cites, *United States v. Cardwell, does* support his assertion. In *Cardwell*, the warrant at issue, which was found to not be particular enough, outlined various pieces of property to seize and said such property must be "of violations of 26 U.S.C. s 7201." 680 F.2d 75, 76 (9th Cir. 1982). The Ninth Circuit found that "'limiting' the

search to only records that are evidence of the violation of a certain statute is generally not enough." *Id*. at 78. The court went on to say that "(G)eneric classifications in a warrant are acceptable only when a more precise description is not possible." *Id*. (alteration in original) (quoting *United States v. Bright*, 630 F.2d 804, 812 (5th Cir. 1980)). Further, in assessing whether a provision in a warrant is sufficiently particular, courts should consider the totality of circumstances with one crucial factor being what information was available to the government. *Id*.

In the instant matter, although Attachment B includes subcategories within Section 1, none of those subcategories specified what property was allegedly stolen, meaning Agent Spitzer failed to provide "a more precise description" of the item, even though he easily could have, and despite the fact that the cited statute is a broad one that could potentially encompass evidence of any property other than crab that might be deemed to have been stolen. The language used would allow a law enforcement officer to seize information from the devices that they believed relate to violations of Interstate Transport of Stolen Property *in general*, rather than the conduct supported by probable cause in the affidavit. Such a broad statement gave law enforcement officers discretion to decide if they believed information viewed on any of the devices "relate[d] to violations involving 18 U.S.C. § 2314," regardless of whether such evidence was specific to the alleged offenses in the date range of December 2022 to Mr. Subil's arrest on February 19, 2023. In essence, this cast a far wider net than the warrant should have allowed. And "[t]he purpose of particularizing the items to be seized is to insure that when the warrant is executed, nothing is left to the officer's discretion." *United States v. Hurt*, 795 F.2d 765, 772 (9th Cir. 1986), *amended on denial of reh'g*, 808 F.2d 707 (9th Cir. 1987).

Therefore, the Court finds that the contents within Section 1 of Attachment B are not sufficiently particular.

### C. The Good Faith Exception

"Evidence seized pursuant to a facially valid search warrant which later is held to be invalid may nevertheless be admissible if officers conducting the search acted in good faith and in reasonable reliance on the warrant." *Kow*, 58 F.3d at 427 (citing *United States v. Leon*, 468 U.S. 897, 926 (1984)). The government holds the burden of proving that an officer's reliance upon the warrant was objectively reasonable. *Id*. There are four circumstances in which the good faith exception does not apply: (1) when the warrant is "so facially deficient" that no executing officer could reasonably presume it to be valid; (2) when the warrant results from recklessly or knowingly misleading the issuing judge; (3) when the affidavit supporting the warrant is "bare bones"; and (4) when the issuing judge "wholly abandons his or her judicial role." *Leon*, 468 U.S. at 923 & n.4. Only the first circumstance is at play in this case.

The Government makes several arguments as to why the good faith exception applies.[3] First, it argues that it was objectively reasonable for Agent Spitzer to rely on the reviewing judge's authorization. Dkt. No. 185 at 10. The Government also argues that the fact that "the seizure was not overbroad and was conducted by an officer with intimate familiarity with the underlying probable cause further establishes that the warrant was executed in good faith." *Id*. at 11 (citing *United States v. Luk*, 859 F.2d 667, 677–78 (9th Cir. 1988)). As to the good faith exceptions outlined in *Leon*, the Government argues that none of them apply because "[t]he warrant was not deficient, it was not the result of any misleading statements, it was sufficiently particular, and there is nothing to suggest the magistrate was anything other than neutral and disinterested." *Id*. at 10.

[3] Some of the Governments arguments regarding good faith relate to Mr. Subil's delayed notice arguments, which the Court need not address, as the Court rules in favor of the Government on that issue.

Most compelling of the Government's arguments is its reference to Agent Spitzer writing the warrant as well as supervising and participating in the search. The Government supports this argument by citing *United States v. Luk*. In *Luk*, the Ninth Circuit found the good faith exception applied in part because the agent who authored the affidavit was present at the search to help advise as to what was within the scope of the search. 859 F.2d at 677. Here, Agent Spitzer supervised and participated in the search (Dkt. No. 185-1 (Agent Spitzer Decl.) ¶ 4), which leads the Court to believe that, as in *Luk*, any concern that the searching officers would not have guidance as to what they could and could not seize is alleviated. Moreover, in *Luk*, the officers relied on the lead agent's detailed affidavit to understand the parameters of the seizure. 859 F.2d at 677. The court held that "The absence of any contention that the officers seized any items other than those relating to transactions described in the affidavit indicates that the agents relied on the more particular affidavit. Moreover, it evidences the officers' good faith." *Id*. In the instant matter, Mr. Subil does not contend that the officers seized any information outside the scope of the events provided in Agent Spitzer's affidavit. *See* Dkt. Nos. 174, 193. Without any assertion that the officers expanded their search and seizure outside of what was supported by probable cause, the Court finds similarly to the Ninth Circuit's determination in *Luk* that "the agents here acted in good faith by limiting their search to items relating to those transactions described in the affidavit with respect to which there existed probable cause to seize." 859 F.2d at 677. In addition to Agent Spitzer's supervision and presence during the search, the Court notes that Supreme Court precedent provides that under the good faith exception, "'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)). This is further reason that Agent Spitzer relied in good faith on his belief that the warrant was valid.

In total, Agent Spitzer's reliance on the magistrate judge signing his search warrant application, his presence and supervision conducting the search, and the lack of any assertion that information outside the scope of probable cause was seized, all lead the Court to find that Agent Spitzer acted in good faith and in reasonable reliance on the warrant.

Therefore, Mr. Subil's request to suppress the fruits of the search warrant due to it being insufficiently particular is denied.

## IV. Conclusion

Accordingly, Mr. Subil's motion (Dkt. No. 174) is DENIED.

Dated this 13th day of November, 2026.

Tana Lin
United States District Judge