UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,
Plaintiff,

v.

DAVID SUBIL and JUAN MANUEL SANCHEZ ABREU,
Defendants.

CASE NO. 2:23-cr-00030-TL

ORDER ON MOTION TO SEVER DEFENDANTS

This matter is before the Court on Defendant Juan Manuel Sanchez Abreu's Motion to Sever his trial from that of his co-defendant, David Subil. Dkt. No. 191. Mr. Subil has filed a timely notice of joinder in the motion. Dkt. No. 198. Having considered the Motion to Sever Defendants, the Government's Response in opposition (Dkt. No. 202), Mr. Sanchez Abreu's Supplemental Memorandum in Support of the Motion to Sever (Dkt. No. 221), the Government's Response to Mr. Sanchez Abreu's Supplemental Memorandum (Dkt. No. 224), Mr. Sanchez Abreu's Reply in Support of his Supplemental Memorandum (Dkt. No. 227), and the relevant record, and no Party having requested oral argument, the Court DENIES the motion.

## I. Background

The Court assumes familiarity with the allegations and general facts in this case. *See generally* Dkt. No. 1 (Complaint against Mr. Subil, No. MJ23-74); Dkt. No. 1 (Complaint against Mr. Sanchez Abreu, No. MJ23-373); Dkt. No. 110 (Third Superseding Indictment).

Mr. Subil and Mr. Sanchez Abreu are charged with Conspiracy to Commit Interstate Transportation of Stolen Property, Transportation of Stolen Property, and Conspiracy to Commit Money Laundering. Dkt. No. 110. Mr. Subil is also charged with Money Laundering. *Id.* In total, the Third Superseding Indictment contains 38 counts: 30 against Mr. Subil alone, 4 against Mr. Sanchez Abreu alone, and 4 against both Defendants. The Government alleges that Mr. Subil and Mr. Sanchez Abreu conspired to fraudulently order hundreds of thousands of dollars' worth of Russian king crab from Arctic Seafood while posing as "agent[s] of Safeway," obtained that seafood from a storage facility located in Washington that contracted with Arctic Seafood to store and ship its goods, and transported the seafood to Florida where it was resold for a profit. *Id.* ¶¶ 2, 11; Dkt. No. 1 ¶ 6.

Mr. Sanchez Abreu filed the instant motion on October 5, 2026, and Mr. Subil filed a timely notice of joinder. Dkt. Nos. 191, 198. The Government opposed the motion (Dkt. No. 202), and Defendants originally did not file a reply. However, at a meet-and-confer between the Parties on October 29, 2026, counsel for Mr. Sanchez Abreu became aware for the first time of particulars of Mr. Subil's defense strategy that Mr. Sanchez Abreu considered to have "materially changed" the circumstances and considerations discussed in the earlier briefs. Dkt. No. 221 at 2, 11. On Mr. Sanchez Abreu's unopposed request, the Court granted leave for additional briefing, and Mr. Sanchez Abreu and the Government each filed a supplemental memorandum addressing the impact of the new information on the Motion to Sever. *See* Dkt. Nos. 218 (Minute Order granting leave to file), 221, 224. With the Court's further leave,

Mr. Sanchez Abreu filed a reply memorandum on November 6, 2026. Dkt. No. 227; *see* Dkt. Nos. 226 (Motion for Leave to File), 231 (Order Granting Leave to File). The matter is now fully briefed and ready for the Court's consideration.

## II. Legal Standard

"Joint trials are the rule rather than the exception." *United States v. Brashier*, 548 F.2d 1315, 1324 (9th Cir. 1976). "There is a substantial public interest in" the joint-trial procedure, which "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *Parker v. United States*, 404 F.2d 1193, 1196 (9th Cir. 1968). Joint trials also "serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability," and preventing sequential trials that "randomly favor[] the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Joint trials are especially appropriate for defendants tried as co-conspirators, as "much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004). Some level of prejudice is common in a joint trial, and "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Where a risk of prejudice exists, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice" in lieu of severance. *Id.* at 539.

Even so, the trials of jointly indicted defendants may be severed where joinder of defendants "appears to prejudice a defendant or the government[.]" Fed. R. Crim. P. 14(a). The decision of whether to sever defendants is committed to the sound discretion of district courts,

who should consider "whether the prejudice attending a joint trial outweighs the need to conserve judicial resources and to avoid further crowding of federal trial calendars with a succession of factually related actions[.]" *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir. 1978). For example, "a great disparity in the amount of evidence introduced against joined defendants may, in some cases, be grounds for severance." *United States v. Douglass*, 780 F.2d 1472, 1479 (9th Cir. 1986). However, such evidentiary "spillover" is grounds for severance only "in rare cases," *United States v. Patterson*, 819 F.2d 1495, 1503 (9th Cir. 1987), and a defendant seeking severance on spillover grounds "must also demonstrate the insufficiency of limiting instructions." *United States v. Hanley*, 190 F.3d 1017, 1027 (9th Cir. 1999). Severance is appropriate where codefendants present defenses that are "mutually exclusive"—that is, where "acquittal of one codefendant would necessarily call for the conviction of the other." *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991); *see also United States v. Angwin*, 271 F.3d 786, 795–96 (9th Cir. 2001). "Antagonism between defenses or the desire of one defendant to exculpate himself by inculpating a codefendant, however, is insufficient to require severance." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). "To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Id.*

## III. DISCUSSION

Initially, Mr. Sanchez Abreu argued that severance was warranted due to the disparity in the charges and evidence between the two Defendants, and because their trial positions might put them at odds. Although Mr. Sanchez Abreu did not initially "contend that the defendants have established 'mutually exclusive' defenses in the technical sense," (Dkt. No. 191 at 9), his later memoranda emphasize that Mr. Subil's stated intention "to present a defense that Mr. Sanchez

Abreu was responsible for the theft" (Dkt. No. 221-1 (Black Decl.) at 2) and to present evidence directly adverse to Mr. Sanchez Abreu positions Mr. Subil as a "second prosecutor" and renders Defendants' defenses mutually exclusive. Dkt. No. 221 at 7.

**A. Mr. Sanchez Has Not Demonstrated that Severance Is Warranted Due to the Disparity of Evidence Between the Defendants**

Mr. Sanchez Abreu first argues that severance is warranted due to "[t]he disparity in the scope and character of the evidence against the two defendants creates a substantial danger of prejudicial spillover." Dkt. No. 191 at 5. Only Mr. Subil, not Mr. Sanchez Abreu, is accused of creating and using false identities, arranging fraudulent purchases, re-selling the allegedly stolen seafood, and participating in the vast majority of the money-laundering transactions. *Id.* at 10. Mr. Sanchez Abreu argues that this "disparity creates a substantial danger that the jury will evaluate Mr. Sanchez Abreu through the lens of the overall scheme rather than separately assess the evidence establishing his own guilt." *Id.* at 6 (citing *Douglass*, 780 F.2d at 1479). He further argues that his knowledge and conduct are likely to be central issues at trial, and his case may be undermined if a jury "understandably come[s] to view the overall enterprise as plainly criminal" based on the sheer volume of evidence unrelated to, and inadmissible against, Mr. Sanchez Abreu himself. *Id.* at 7.

Mr. Sanchez Abreu also argues that limiting jury instructions "may not adequately cure the prejudice created by the scope and structure of a joint trial." *Id.* at 8. The Government responds with several cases in which courts in this District "reject[ed] such conclusory claims." Dkt. No. 202 at 8 (citing *United States v. Washington*, No. CR23-58, Dkt. No. 191 (W.D. Wash. Jan. 31, 2025); *United States v. Whiteside*, No. CR24-186, Dkt. No. 373 (W.D. Wash. Aug. 25, 2026)). The Court agrees that Mr. Sanchez Abreu's argument that limiting instructions would be insufficient is conclusory and unconvincing. To the extent that Mr. Sanchez's defense is that he

simply participated as a hired truck driver by an enterprise he did not know was criminal (*see* Dkt. No. 191 at 7), that defense is not precluded by a large volume of evidence that the enterprise was criminal, which can coexist with evidence or argument that Mr. Sanchez Abreu lacked knowledge of criminality. Jurors can be instructed that this evidence is not be offered against Mr. Sanchez Abreu, and, as he acknowledges, jurors "are ordinarily presumed capable of following instructions directing them to consider the evidence separately as to each defendant and each count." *Id.* at 8 (citing *Zafiro*, 506 U.S. at 540–41). The Motion does not show that the circumstances here present an exception to this rule. Indeed, the fact that Mr. Subil and Mr. Sanchez Abreu are charged with "materially different categories of alleged conduct" (*id.*) seems just as likely to *help* jurors distinguish among the evidence and charges related to each Defendant as to hinder them in this task. The Government also points to Ninth Circuit precedent upholding a joint trial with appropriate limiting instructions even when one or more defendants were charged with far more serious crimes than the defendant seeking severance. Dkt. No. 202 at 6 (citing *United States v. Matta Ballesteros*, 71 F.3d 754 (9th Cir. 1996)). The Court finds the district and appellate precedents presented by the Government persuasive and does not find good cause to accept Mr. Sanchez Arbreu's assertion that there is a "substantial risk that the jury will fail to make [an] individualized determination of guilt" if he is tried along with Mr. Subil. Dkt. No. 191 at 11. As such, the Court finds that Mr. Sanchez Abreu has not carried his burden to "demonstrate the insufficiency of limiting instructions," *Hanley*, 190 F.3d at 1027, and does not find that potential evidentiary spillover creates a likelihood of significant prejudice that outweighs the substantial policy reasons for trying Defendants jointly.

//

//

//

**B. Mr. Sanchez Abreu Has Not Demonstrated that Defendants' Defenses are Mutually Exclusive or So Antagonistic as to Warrant Severance**

In his initial motion, Mr. Sanchez Abreu also argued that Defendants' respective "trial positions may further increase the risk of prejudice." Dkt. No. 191 at 9. In his subsequent memoranda, Mr. Sanchez Abreu argues that prejudice flowing from Mr. Subil's trial strategy is no longer speculative in light of revelations that (1) "Mr. Subil . . . intends to seek admission of evidence concerning a separate allegedly suspicious theft involving Mr. Sanchez Abreu," and (2) "Mr. Subil now intends to argue that Mr. Sanchez Abreu was responsible for the charged theft." Dkt. No. 221 at 11. Mr. Sanchez Abreu includes with his memorandum a declaration by his counsel recounting statements to this effect by Mr. Subil's counsel during the October 26, 2026, meet-and-confer. Dkt. No. 221-1 at 2. Relying on *United States v. Throckmorton*, Mr. Sanchez Abreu argues that Mr. Subil's planned defense goes beyond "[a]ntagonism or blame-shifting" (which does not require severance) and presents a situation "where 'the core of the codefendant's defense is so irreconcilable with the core of his own defense' that acceptance of the codefendant's theory precludes the defendant's acquittal." Dkt. No. 221 at 3 (quoting 87 F.3d at 1072). "If the jury accepts [Mr. Subil's] theory," Mr. Sanchez Abreu argues, "it necessarily rejects the proposition that Mr. Sanchez Abreu transported the seafood without knowing that it was stolen." *Id.* at 4.

But accepting a defendant's theory is not the same as accepting everything they say. *See United States v. Shields*, 673 F. App'x 625, 627 (9th Cir. 2016) ("While the jury may have acquitted Sims and convicted Shields if it believed *every aspect* of Sims' defense, Shields' guilt was not the core of Sims' defense; Sims' innocence was."). In *Throckmorton*, for example, the defendant moving for severance argued that the government had not presented sufficient evidence to convict him, while his codefendant admitted participating in the charged conduct but

claimed he had done so as a DEA informant. 87 F.3d at 1072. The Court of Appeals found that the core of their defenses were not irreconcilable because the jury could accept the codefendant's informant defense and still acquit Throckmorton for lack of evidence—*even though* the codefendant provided "devastating" testimony "regarding Throckmorton's involvement as the leader of the smuggling operation." 87 F.3d at 1072, 1069.

Mr. Sanchez Abreu's attempt to distinguish this case from *Throckmorton* fails because there is currently no basis for the Court to accept his conclusory characterization that Mr. Subil's plan to place blame on Mr. Sanchez Abreu constitutes the "core" of Mr. Subil's defense. As the Government points out, "Mr. Subil's pretrial filings make no mention of blaming Mr. Sanchez Abreu or the 2022 incident, and instead suggest that Mr. Subil's primary defense will be that the government cannot establish that he ever possessed stolen seafood." Dkt. No. 224 at 3; *see, e.g.*, Dkt. No. 170 (Mr. Subil's Motion to Dismiss Indictment) at 6 ("Because the government never seized or even inspected the frozen crab or box labels that was in Florida, the only evidence regarding the product is the photographs of the crab and a few photographs of the box labels[,]" which "are not sufficient to demonstrate that the product was the same crab that was picked up on January 18 or 20 that was allegedly stolen."). Even in light of his stated intention to blame Mr. Sanchez Abreu, the goal of "Mr. Subil's defense . . . is to show his own innocence" and cast doubt on the Government's case against him—not to show that the theft could only have been conducted by Mr. Sanchez Abreu. Dkt. No. 224 at 4. It is presently unknown whether evidence about the separate theft will be admitted, and for what purpose, nor if and how Mr. Subil would go about blaming the present crime on Mr. Sanchez Abreu in the absence of that evidence. Without more, a mere statement by Mr. Subil's counsel "that he intends to present a defense that Mr. Sanchez Abreu was responsible for the theft of the seafood at issue in this case" (Dkt. No. 221-1 at 2) is indistinguishable from the mere "[a]ntagonism" or "desire of one defendant to

exculpate himself by inculpating a codefendant" that the *Throckmorton* court cautioned "is insufficient to require severance." 87 F.3d 1069, 1072 (9th Cir. 1996).

Even if the 2022 evidence is admitted—and even if it is prejudicial to Mr. Sanchez Abreu—it does not mean his defense and Mr. Subil's are mutually exclusive. The 2022 event, in Sioux City, Iowa, involved another load of crab that Mr. Sanchez Abreu was delivering *to* Arctic Seafood, when he reported his truck, along with the crab, had been stolen. Dkt. No. 221-2 (Sioux City police report) at 3–4, 5. Months after the theft, a Detective supplemented the police report with information about his suspicions that Mr. Sanchez Abreu himself may have been involved in the disappearance of the truck. *Id.* at 4–7. Even if jurors hear evidence about this event and share the detective's suspicions, however, this would not prevent them from acquitting Mr. Sanchez Abreu (and Mr. Subil) of the charges brought in *this* case, because they could "potentially find that the government failed to prove that (a) Mr. Subil orchestrated the theft, and (b) Mr. Sanchez Abreu knew the seafood he was transporting was stolen." Dkt. No. 224 at 4. If the evidence is admissible against Mr. Sanchez Abreu, and if the "core" of Mr. Subil's hypothetical defense does not preclude Mr. Sanchez Abreu's acquittal, then the presentation of the evidence would not be unduly prejudicial and severance is not warranted. *See Throckmorton*, 87 F.3d at 1072.

Likewise, even if Mr. Subil does present a defense placing responsibility on Mr. Sanchez Abreu, this is likely to be only one of many arguments Mr. Subil uses to argue for his own acquittal, and the jury will likely have other avenues to acquit Mr. Subil while also accepting Mr. Sanchez Abreu's own defense that he lacked knowledge of the crime. Put differently, Mr. Subil's defense would only become mutually exclusive with Mr. Sanchez Abreu's if he relied so heavily on blaming Mr. Sanchez Abreu that accepting Mr. Sanchez Abreu's guilt became the only way for the jury to acquit Mr. Subil. This was the case in *United States v.*

*Tootick*, 952 F.2d 1078 (9th Cir. 1991), a case relied on by Mr. Sanchez Abreu. There, because it was beyond dispute that the assault at issue occurred and that the two defendants were the only people present who could have committed it, the only way for either to establish his own innocence was to establish his co-defendant's guilt. *Id.* at 1081. Therefore, "[e]ach defense theory contradicted the other in such a way that the acquittal of one necessitate[d] the conviction of the other." *Id.*[1]

Here, by contrast, Mr. Subil's stated intention to cast blame on Mr. Sanchez Abreu does not preclude the possibility of acquittal for both Defendants—the jury can still acquit Mr. Sanchez Abreu based on his lack-of-knowledge theory even if it finds the Government has not met its burden to convict Mr. Subil, and, indeed, even if it believes there is something suspicious about the 2022 theft (which was fundamentally different in nature from the fraudulent-purchase scheme alleged in this case). The defenses are therefore not mutually exclusive. *See, e.g.*, *United States v. Burns*, 229 F.3d 1159 (9th Cir. 2000) (affirming denial of severance motion where two defendants cast blame on each other because "the jury could have accepted both defenses and concluded that there was insufficient evidence to convict either").

Mr. Sanchez Abreu's point is well taken that, although much of the relevant case law addresses the retrospective question of whether a trial judge abused their discretion by denying severance, the proper inquiry at this posture "is whether the circumstances now known create sufficient prejudice—and a sufficiently serious risk to an individualized determination of guilt—to warrant severance before that prejudice occurs." Dkt. No. 221 at 7. Nevertheless, the policy and efficiency considerations that make joint trials the norm for alleged co-conspirators require

---

[1] Mr. Sanchez Abreu also relies heavily on *United States v. Mayfield*, 189 F.3d 895, 903 (9th Cir. 1999). But the reversal in *Mayfield* was largely based on the admission of evidence that violated a defendant's rights under the Confrontation Clause. *Id.* at 900–05. Here, Mr. Sanchez Abreu does not seek severance on Confrontation Clause grounds.

more than a mere possibility of prejudice. At this juncture, the showing made by Mr. Sanchez Abreu—that Mr. Subil intends to seek to admit evidence of a 2022 theft that Mr. Sanchez Abreu was never charged with, or formally accused of, and to otherwise cast blame on Mr. Sanchez Abreu in ways that are presently unknown—is not sufficient to show that his defense and Mr. Subil's are mutually exclusive or otherwise so antagonistic that the risk of undue prejudice overcomes the presumption that they should be tried together. If it were, any jointly indicted defendant could create the conditions for severance by merely announcing an intention to mount a defense that blamed their co-defendant. This is a result that *Throckmorton* and other relevant authorities do not permit.

## IV. CONCLUSION

Accordingly, for the reasons stated in this Order, the Court DENIES Defendants' motions to sever (Dkt. Nos. 191 and 198).

Dated this 13th day of November, 2026.

Tana Lin
United States District Judge